**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

BRENDALIZ SOTO-CEPEDA,

Plaintiff,

v.

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.

CIVIL NO. 25-1303 (HRV)

**OPINION AND ORDER**

Brendaliz Soto-Cepeda (hereinafter "Plaintiff" or "Ms. Soto") seeks judicial review of the final administrative decision of the Commissioner of Social Security ("the Commissioner") denying her claim for disability benefits under the Social Security Act ("the Act"). After careful consideration of the record, and for the reasons outlined below, I find that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence, and must, therefore, be reversed. This matter is remanded to the Social Security Administration for further administrative proceedings.

## I. LEGAL FRAMEWORK

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), any individual may obtain review of a final decision of the Commissioner. Under said statutory provision, the Court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming,

modifying, or reversing the decision of the Commissioner…." *Id.* In addition, the statute provides that if supported by substantial evidence, the findings of the Commissioner as to any fact, shall be conclusive. *Id.*

A reviewing Court must uphold the decision of the Commissioner as long as the Administrative Law Judge ("ALJ") applied the correct legal principles, and the determination is supported by substantial evidence. *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). The scope of my review is thus limited. I am tasked with determining whether the ALJ employed the proper legal standards and focused facts upon the proper quantum of evidence. *See Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000); *see also Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).

To meet the evidentiary benchmark, more than a scintilla of evidence is required. *Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018). But the threshold for evidentiary sufficiency is not particularly high; if after looking at the existing administrative record, the court is persuaded that it contains sufficient evidence to support the Commissioner's factual and legal determinations, the decision is bound to be affirmed. *See Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019); *see also Mosconas v. Saul*, No. 19-2049, 2020 WL 6255298, 2020 U.S. App. LEXIS 33755, at *2 (1st Cir. Sept. 15, 2020) (citation omitted) ("Substantial evidence does not require preponderant evidence; it merely requires evidence that reasonably supports the finding on the record as a whole.") Indeed, substantial evidence exists "if a reasonable mind, reviewing the evidence in the record, could accept it as adequate to support [the] conclusion." *Irlanda-Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). The ALJ's decision must be reversed,

however, if it was arrived at "by ignoring evidence, misapplying law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

**B. The Five-Step Sequential Evaluation Process**

To be eligible for social security benefits, a claimant must demonstrate that he or she is "disabled" within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 146, (1987). The Act defines disability in pertinent part as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(a) and 1382c(a)(3)(A). The impairment or impairments must be severe enough that "he [or she] is not only unable to do his [or her] previous work but cannot . . . engage in any other kind of substantial gainful work which exists [in significant numbers] in the national economy…." *Id.*, § 423(d)(2), § 1382c(a)(3)(B); *see also* 20 C.F.R. § 404.1520(a)(1).

The Commissioner follows a five-step evaluation process to determine disability. *See Mills v. Apfel*, 244 F.3d 1, 2 (1st Cir. 2001); 20 C.F.R. § 404.1520(a). These steps must be followed in order, and if a person is determined not to be disabled at any step, the inquiry stops. *Id.* The Plaintiff has the burden of proof at the first four steps of the process. *Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001).

Step one considers work activity, that is, whether the Plaintiff is currently "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the person is, then she is not disabled under the Act. *Id.* Step two asks whether Plaintiff has physical or mental impairment, or a combination of impairments, that is severe and meets the Act's duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). Step three considers the medical

severity of the Plaintiff's impairments. 20 C.F.R. § 404.1520(a)(4)(iii). At this step, if Plaintiff is determined to have an impairment that meets or equals an impairment listed in 20 C.F.R. pt. 404, Subpt. P., app. 1, and meets the duration requirements, she is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). On the other hand, if the Plaintiff is not found to be disabled at this step, her Residual Functional Capacity ("RFC") is assessed. 20 C.F.R. § 404.1520(a)(4), (e). Once the ALJ determines the RFC, the inquiry proceeds to step four. Step four compares Plaintiff's RFC to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the Plaintiff can still do her past relevant work, she is not disabled. *Id.* Finally, at step five, the Plaintiff's RFC is considered alongside her "age, education, and work experience to see if [she] can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). If she can make an adjustment to other work, she is not disabled; if she cannot, she is disabled. *Id.* At this step, it is the Commissioner who has the burden "to come forward with evidence of specific jobs in the national economy that the applicant can still perform." *Freeman v. Barnhart*, 274 F.3d at 608 (*citing Arocho v. Sec'y of Health & Human. Servs.*, 670 F.2d 374, 375 (1st Cir. 1982)).

## II. Factual Background and Procedural History

Plaintiff filed an application for Title II Disability Insurance Benefits on December 1, 2021, alleging an onset date of July 6, 2020. *See* Transcript of Social Security Proceedings ("Tr."), Docket No. 15 at 29. (Tr. 482-83). Initially the claim was denied on April 27, 2022 (Tr. 273-278), and on reconsideration on July 14, 2022. (Tr. 280-284). An initial hearing was held on November 2, 2023, presided by ALJ Julicel Sepúlveda-Anavitarte, at which Plaintiff was represented by attorney José Alfaro-Delgado, on behalf of Ricky Gar-Stern, a non-attorney representative. (Tr. 57-75). Also present at the

hearing was María De León, an impartial vocational expert. (Id.). A supplemental hearing was held on April 16, 2024, where Plaintiff, once again, was represented by attorney Alfaro-Delgado. (Tr. 43-56). Also present at hearing were Dr. Francisco Joglar, an impartial medical expert and Pedro Román, an impartial vocational expert. (Id.). The ALJ issued her written decision on May 30, 2024 (Tr. 20-42), which I briefly summarize below.

At Step One, the ALJ determined that Ms. Soto was not engaged in substantial gainful activity since the alleged onset date, that is, July 6, 2020. (Tr. 25). As to Step Two, the ALJ found Plaintiff had the following severe impairments: carpal tunnel syndrome, osteoarthritis, and cervical and lumbar spine disorders. (Tr. 26). At Step Three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, particularly 1.15, 1.16 and 1.18, the ones found to be applicable to claimant's impairments. (Tr. 28). The ALJ found that the record did not establish medical signs, symptoms, laboratory findings or degree of functional limitation required to meet or equal the relevant criteria. (Id.).

Next, and prior to moving to Step Four of the sequential process, the ALJ concluded that Plaintiff had an RFC

> to perform light work as defined in 20 CFR 404.1567(b) except that she can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently. The claimant can sit for six hours, stand for eight hours, and walk for eight hours during an eight-hour workday. She can frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant can frequently stoop and kneel, occasionally crouch, but never crawl. She can perform bilateral handling, fingering, and feeling on a frequent basis. Finally, the

> claimant can never work at unprotected heights, but can occasionally work around moving mechanical parts and frequently operate a motor vehicle.

(Tr. 29).

In reaching this conclusion, the ALJ stated that she considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSR 16-3p, as well as medical opinions and prior administrative medical findings as required by 20 C.F.R. § 404.1520c. (Id.). As part of the required two-step process[1] the ALJ must follow in considering Plaintiff's symptoms, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Ms. Soto's statements regarding the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence on the record. (Tr. 30). In so finding, the Judge concluded that the record contains objective medical evidence establishing that while severe, Plaintiff's impairment "are not profoundly limiting or functionally disabling". (Tr. 30).

The ALJ principally relied on the opinion (and testimony) of Dr. Francisco Joglar ("Dr. Joglar"), an impartial medical expert. (Id.). She found Dr. Joglar's opinion

[1] The ALJ outlined the two-step process mandated by 20 C.F.R. § 404.1529 and SSR 16-3p as follows. First, the ALJ must determine whether there is an underlying medically determinable physical or mental impairment(s), one that can be shown by medically acceptable clinical or laboratory diagnostic techniques that could reasonably be expected to produce the pain or other symptoms. (Tr. 29). Second, once a physical or mental impairment that could reasonably be expected to produce pain or other symptoms has been shown, the ALJ must evaluate the intensity, persistence, and limiting effects of symptoms to determine the extent to which they limit work-related activities. (Tr. 30).

persuasive because in addition to being a specialist familiar with SSA regulations, he reviewed the entire medical record and provided detailed explanations with specific references to evidence on the record. (Id.). According to the ALJ, the opinion of Dr. Joglar regarding Plaintiff's limitations was "considerably similar" to the RFC she assessed. The ALJ also concluded that Dr. Joglar's opinion was consistent with the clinical findings of the consultative examination performed by Dr. José Carro-Rivera ("Dr. Carro"), a physiatrist. (Id.). After summarizing the findings of Dr. Carro's examination of Ms. Soto (outlined in Exhibit 6F), the ALJ found that his opinion and examination report were considered "generally persuasive as they were is "consistent with the overall medical record[,] . . . supported by [his] own physical examination findings, and corroborated by several radiographic studies, and the preponderance of the medical evidence from treating medical sources on file." (Tr. 31).

The ALJ acknowledged, however, that she did not adopt one aspect of Dr. Carro's assessment: that Plaintiff could lift and carry only up to 10 pounds. (Id.). In her view, "the record and the evidence received at the hearing level including, the impartial medical expert's opinion of Dr. Joglar, showed that the claimant support [sic] that she could lift and carry 20 pounds occasionally and 10 pounds frequently taking into consideration the normal physical exam findings by her treating physicians despite her muscle pain complains." (Tr. 31-32). The ALJ additionally mentioned that she likewise took into account and evaluated the prior administrative medical findings of medical consultants who opined, in pertinent part, that Plaintiff could perform a reduced range of sedentary work. (Tr. 32). Those opinions were found only partially persuasive inasmuch as the ALJ understands that they "overestimated the claimant's physical

impairments and the exertional limitations caused by them." (Tr. 33). Notably, the ALJ concluded that "medical evidence on file clearly demonstrates that the [Plaintiff's] musculoskeletal conditions and associated symptoms have limited her to a full range of light exertion work" and that such RFC "is more consistent with the claimant's routine physical examinations that continuously showed normal findings." (Id.). In sum, the ALJ said that in making the RFC assessment, she considered the medical expert's testimony (Dr. Joglar), several radiographic studies, Dr. Carro's reported findings and Plaintiff's treatment history. (Id.).

At Step Four, the ALJ found Ms. Soto was unable to perform any past relevant work. (Tr. 33). Lastly, at Step Five, the ALJ concluded that based on her age, education, work experience and residual functional capacity, there were jobs existing in significant numbers in the national economy Ms. Soto could perform such as Assembler Small Products I, Cashier II, and Marker. (Tr. 35). Thus, the ALJ held that Ms. Soto was not disabled under the Act. (Tr. 36).

On June 18, 2024, Plaintiff sought review of the ALJ's decision and on April 3, 2025, the Appeals Council denied her request for review making the decision final. (Tr. 1-6; 480-81). On June 6, 2025, Ms. Soto filed an application to proceed in forma pauperis and her social security complaint in this Court. (Docket Nos. 1, 2). On June 11, 2025, the case was referred to me for all further proceedings including the entry of judgment. (Docket Nos. 8, 9). Plaintiff's brief was filed on October 3, 2025, (Docket No. 18). The Commissioner's brief was filed on October 28, 2025, (Docket No. 20), and Plaintiff filed her reply on November 12, 2025. (Docket No. 21).

## III. DISCUSSION

Ms. Soto challenges the ALJ's determination that she had an RFC to perform a "full range of light exertional work" as not supported by substantial evidence. She also contends that the ALJ's flawed RFC assessment is not harmless. The crux of Plaintiff's argument is that of the four medical opinions in the record, three experts concluded that she could lift-carry objects no more than ten (10) pounds, but only one found Plaintiff could lift up to twenty (20) pounds occasionally, as well as, stand and walk for eight (8) out of eight (8) hours in a workday. (*See* Plaintiff's Brief, Docket No. 18 at 7). It was error, Plaintiff says, to disregard the opinions of these three experts, and to accept instead, the opinion of a non-examining expert in order to conclude that "[t]he medical evidence on file **clearly demonstrates** that the claimant's musculoskeletal conditions and associated symptoms have limited her to a full range of light exertional work" as opposed to sedentary. (Docket No. 6-7) (quoting Tr. 33) (emphasis added). Plaintiff also takes issue with the finding that her routine physical examinations "continuously showed normal findings." (Id. at 8). The error was compounded, according to Plaintiff, when the ALJ did not mention Ms. Soto's orthopedist who had recommended spinal surgery.

The Commissioner responds that substantial evidence supports the finding of the ALJ that Ms. Soto could lift and carry up to twenty pounds occasionally based on the opinion of the one non-examining expert. (Docket No. 20 at 3). The Commissioner further posits that the ALJ complied with the applicable regulations (20 C.F.R. § 404.1520c) "by articulating how persuasive she found the medical opinion evidence and prior administrative medical findings, while expressly discussing the regulatory factors of supportability and consistency." (Id.).

In her reply, Plaintiff states that her position is not that the existence of three medical opinions against one makes the latter opinion automatically unpersuasive. She complains of misstatements and mischaracterizations in the way the ALJ evaluated the four medical opinions and other medical evidence in the record to reach her conclusion that the evidence clearly demonstrated an RFC to perform light work. (Docket No. 21 at 3-4).

**A. The RFC determination is not supported by substantial evidence**

As stated, Plaintiff's claim on review before this Court is a challenge to the RFC determination as not supported by substantial evidence because the ALJ improperly evaluated the medical opinions in the record. I agree with Plaintiff that the ALJ erred in her weighing of the medical opinions.

An ALJ must articulate how persuasive he or she finds "all of the medical opinions and all of the prior administrative medical findings" in a claimant's record. 20 C.F.R. § 404.1520c(b). When making this determination, the ALJ must consider four primary factors: consistency, supportability, the source's relationship with the claimant, and specialization. *Id.* §§ 404.1520c(c)(1)-(4); *see also id.* § 404.1520c(c)(5) (listing other factors the ALJ may consider, such as "evidence showing a medical source has familiarity with the other evidence in the claim"). Supportability and consistency "are the most important factors," and the ALJ must "explain how [she] considered" those factors "for a medical source's medical opinions . . . in [a claimant's] determination or decision." *Id.* § 404.1520c(b)(2); *see also Albro v. O'Malley,* 740 F. Supp. 3d 26, 37 (D. Mass. 2024); *Cross v. O'Malley*, 89 F.4th 1211, 1215 (9th Cir. 2024) ("The 2017 regulations require an ALJ to discuss the supportability and consistency of medical

evidence—the factors the agency has historically found to be the most important in evaluating medical opinion . . . ."). Under the new regulations, however, the ALJ may not, "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," including that of a Plaintiff's treating medical provider. *Id.* § 404.1520c(a); *Nicole C. v. Saul*, No. CV 19-127JJM, 2020 U.S. Dist. LEXIS 1387, 2020 WL 57727, at *4 (D.R.I. Jan. 6, 2020) ("The familiar and longstanding requirements — that adjudicators must assign 'controlling weight' to a well-supported treating source's medical opinion that is consistent with other evidence, and, if controlling weight is not given, must state the specific weight that is assigned — are gone.").

A medical opinion will be considered supportable when the objective evidence and supportive explanations are relevant to support the professional's opinion. 20 C.F.R. § 404.1520c(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)," the more persuasive that opinion will be. 20 C.F.R. § 404.1520c(c)(1) (supportability factor). Likewise, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive" that opinion will be. *Id.* § 404.1520c(c)(2) (consistency factor). A medical opinion will be considered consistent when other medical sources and evidence support said opinion, making it more persuasive. *See* 20 C.F.R. § 404.1520c(2); *see also Delgadillo v. Comm'r of SSA*, 641 F. Supp. 3d 663, 669 (D. Ariz. 2022).

Here, despite finding Dr. Carro's opinion and examination report "generally persuasive" the ALJ rejected his critical assessment that Plaintiff is limited to lift and carry objects up to 10 pounds. She likewise rejected the 10-pound lifting/carrying

limitation finding made by medical consultants of the Disability Determination Service. (Tr. 32; Ex. 2A and 4A). The ALJ reasoned that Dr. Joglar's opinion that Ms. Soto could lift and carry up to 20 pounds occasionally and 10 pounds frequently[2] was more persuasive, "taking into consideration normal physical exam findings by her treating physicians." (Tr. 31-32). But the threating physicians' records do not show normal physical exam findings across the board, nor does the record **clearly** demonstrate that her impairments limit her to a full range of light exertional work as the ALJ categorically held. In fact, as the ALJ herself acknowledged, the record contains multiple radiographic studies which corroborate the severity of her spine disorders. The ALJ said in conclusory fashion that Plaintiff's cervical and lumbar spine impairments "are not profoundly limiting or functionally disabling" and cited as an example, imaging studies that "showed

---

[2] The undersigned also notes that at the hearing before the ALJ, Dr. Joglar testified as follows:

> Q Do they in any way affects the claimant's functioning?
>
> A I understand that they do. I understand that she can occasionally lift 20 lbs., frequently ten lbs.

(Tr. 48). But later in the hearing, the following exchange occurred:

> Q And why is the record inconsistent with being able to lift and carry ten lbs. occasionally and less than ten lbs. frequently?
>
> A Most of the documented physical exams, Your Honor, are documented as normal. In addition to that, the physical exam and most of the complaints reflect neck pain [INAUDIBLE 00:17:03], which she receives blocks for. However, the identified muscle strength and sensory system are always described as adequate, **which is consistent with being able to lift 20 lbs. frequently. Occasionally, ten.**

(Tr. 50) (Emphasis added). A reasonable explanation appears to be that Dr. Joglar misspoke on the latter answer. On remand, this needs to be clarified, because the RFC assessed by the ALJ imposed limitations on lifting and carrying of 20 pounds occasionally, and 10 pounds frequently. In any event, it does not make much sense that a claimant is able to lift/carry 20 pounds frequently but can lift and carry less weight only occasionally. So, most likely, the expert got the adverbs mixed up.

cervical spondylosis and mild discogenic disease causing minimal retrolisthesis of the C5 on C6 and moderate narrowing of the spinal canal at the C5-C6 level." That explanation does not sufficiently articulate, in my view, why the lift/carry limitation Dr. Joglar opined is more persuasive than that of three other medical sources and why said opinion meets the supportability and consistency factors. *See Toledo-López v. Commissioner of Social Security*, No. 24-cv-1019 (MEL), 2025 WL 339177, 2025 U.S. Dist. LEXIS 18135, at *14 (D.P.R. Jan. 30, 2025) (citing 82 Fed. Reg. at 5854) ("A medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, [is] not persuasive regardless of who made the medical opinion."). Notably, and mindful that it is not determinative, Dr. Joglar is a non-examining medical expert. And here, the ALJ's decision to reject the examining doctors' opinions as unpersuasive on the issue of lifting and carrying, is not supported by substantial evidence. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

What's more, the testimony of Dr. Joglar at the hearing (Tr. 45-48) provided a very general summary of the medical evidence he reviewed to issue his opinion. When properly read, Dr. Joglar's summary seems to support the notion that Plaintiff's impairments are serious and documented. Concededly, Dr. Joglar mentions two instances of normal physical exams (Ex. 11F and 5F). He then goes on to outline other studies such as a neck x-ray (Ex. 7F) showing a small fracture C5, a cervical MRI (Ex 1F) showing disc bulging C2 C3 level without stenosis; and disk herniation at C4 C5 and C5 C6 with mild stenosis. Dr. Joglar also mentioned a CT of the cervical spine (Ex. 3F) where

a fracture at C5 is noted. He also talks about the referral to Dr. Luis Marrero, a spine surgeon, based on the MRI results and how Plaintiff was found to be a candidate for surgery. Dr. Joglar further notes that there are records documenting Plaintiff's neck pain and hand numbness as well as the diagnosis of stenosis of the cervical spine. (Tr. 47). Yet, when asked by the ALJ how Ms. Soto's impairments affected her functioning, Dr. Joglar answered: "I understand that she can occasionally lift 20 lbs., frequently ten lbs" without explaining how he arrived at that conclusion. (Tr. 48). Later, but without much elaboration, Dr. Joglar added that prior medical opinions suggesting that Plaintiff was limited to lifting and carrying ten pounds occasionally and less than ten pounds frequently, are inconsistent because "[m]ost of the documented physical exams . . . are documented as normal" and because "the identified muscle strength and sensory system are always described as adequate." (Tr. 50). I cannot conclude that such a terse explanation meets the supportability and consistency factors, making Dr. Joglar's opinion more persuasive than those of the other medical sources. In fact, it is Dr. Joglar's opinion that is inconsistent with that of other medical sources considering the record as a whole.

Relatedly, the ALJ's conclusion that Ms. Soto's physical examinations "continuously showed normal findings" is contradicted by objective medical evidence in the record she herself summarized. This unsupported conclusion also led the ALJ erroneously to find that "the prior administrative medical opinions overestimated the claimant's physical impairments and the exertional limitations caused by them." (Tr. 33). For example, the written decision notes that "[t]hroughout multiple physical examinations the claimant was found with tenderness to palpation in the right

sternocleidomastoid and left sternocleidomastoid muscles" and that plaintiff "presented tenderness to palpation in the back, and trapezius and dorsal paraspinal muscles bilaterally." (Tr. 32; Exs. 2A, 8A, 11A.). Physical exams also reflected a positive result in cervical facet loading tests (Tr. 211 (Ex. 10F)) and ER records showed back and CVA tenderness. (Tr. 802 (Ex. 16F). I am troubled by the fact that the ALJ does not mention other findings in imaging studies that showed a "close wedged fracture of cervical vertebra, sequela," (Tr. 152, 169 (Ex. 5F); Tr. 206 (Ex. 7F)), as well as a "[d]ropped fracture of the anterior superior corner of C5 vertebral body" that "could be a chronic fracture." (Tr. 639 (Ex 3F)). The ALJ's decision likewise fails to mention evidence of the evaluations by orthopedist Dr. Luis Marrero and the observation that Plaintiff is a candidate for surgery (Ex. 13F at 8, Tr. 768-772).[3] Instead, the ALJ highlights progress notes where Ms. Soto was "repeatedly" found to have "normal curvature of the cervical spine, supple neck, intact sensation, full range of motion of the cervical spine, normal deep tendon reflexes, and full bilateral muscular strength and functioning in the upper

---

[3] In fairness, the independent medical expert, Dr. Joglar, mentioned the spine surgeon Dr. Luis Marrero twice during his testimony. (Tr. 46-47). But it is the ALJ who is tasked with articulating the persuasiveness of an opinion by referencing the objective medical evidence in performing the supportability and consistency analysis. *See Martinez v. Kijakazi*, No. 20-cv-30151—KAR, 2021 WL 5054477, 2021 U.S. Dist. LEXIS 209759, at *35 (D. Mass. Oct. 29, 2021) (noting that the regulations require a minimum level of articulation in order to provide a sufficient rationale for the reviewing court and that failure to meet these minimum levels of articulation frustrates this Court's ability to determine whether the ALJ's determination was supported by substantial evidence.). It seems contrary to the applicable standards that an ALJ could consider how "relevant the objective medical evidence and supporting explanations presented by a medical source" are to that source's opinion, even implicitly, without ever once mentioning them. *See* 20 C.F.R. § 404.1520c(c)(1). As to this issue, the Commissioner suggests that the ALJ did not need to discuss the surgery recommendation because she relied on the medical expert who in turn considered the fact that Plaintiff was a candidate for surgery. The problem with this contention is that the flaw with the ALJ's reasoning is not only the failure to mention the surgeon's recommendation, but the contradictory finding that physical examinations continuously showed normal findings.

and lower extremities." (Tr. 32). An ALJ may not cherry-pick from the record sentences or phrases while ignoring the greater context. *See Vazquez v. Kijakazi*, No. 20-cv-30176-KAR, 2022 WL 952764, 2022 U.S. Dist. LEXIS 58904, at *39 (D. Mass. Mar. 30, 2022) (cleaned up).

In view of the above, I find that remand is warranted because the ALJ's weighing of medical opinions is not supported by substantial evidence. As stated above, substantial evidence exists "if a reasonable mind, reviewing the evidence in the record, could accept it as adequate to support [the] conclusion." *Irlanda-Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d at 769; *see also Bourinot v. Colvin*, 95 F. Supp. 3d 161, 175 (D. Mass. 2015) (quoting *Roman-Roman v. Comm'r of Social Security*, 114 Fed. Appx. 410, 411 (1st Cir. 2004)) ("Reversal of an ALJ's decision by this Court is warranted . . . 'if the record contains no evidence rationally adequate . . . to justify the conclusion.'"). My careful review of the evidence in the record has persuaded me that the ALJ's conclusion is not adequately supported. *See Fitts v. Kijakazi*, 691 F. Supp. 3d 390, 401 (D.N.H. 2023) (finding that remand was warranted because the ALJ erred in her assessment of the medical opinion evidence).

**B. The error is not harmless**

It is settled that a claimant's RFC measures "the most [she] can still do despite [her physical or mental] limitations." 20 C.F.R. § 404.1545(a)(1); *Bowen v. City of New York*, 476 U.S. 467, 471 (1986) (RFC "measures the claimant's capacity to engage in basic work activities"). As noted above, the parties quarrel regarding Plaintiff's RFC. The Commissioner advocates for a finding that Ms. Soto has the RFC to perform a full range of light exertional work, which would make her non-disabled given the number of jobs

that she would be able to perform. Plaintiff insists that given her limitations, she should have been restricted to sedentary work as both state agency doctors and the consultative examiner opined. (Docket No. 18 at 9-10).[4]

Plaintiff further posits, as acknowledged by the ALJ (Tr. 35 n.1), that this is a borderline age case. At the time of the decision, Plaintiff was three months away from changing age categories from younger individual (under age 50) to an individual closely approaching advanced age (age 50-54). The regulations allow an ALJ to use the older age category if a claimant is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you [claimant is] disabled." 20 C.F.R. § 404.1563(b). Nonetheless, the ALJ found that given her RFC determination, using the older age category would still result in a finding of not-disabled under the Medical-Vocational Guidelines ("the Grid"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, specifically Rules 202.13 and 202.20. However, under the new age category, Plaintiff says, she could potentially be entitled to a finding of disabled if her RFC changed from light to sedentary work. The Commissioner has not addressed this issue in his brief.

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm and leg controls." 20 C.F.R. § 404.1567(b). Frequent is defined as occurring from one-third to two-thirds of the time and "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of the workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8 hour workday." Social Security Ruling ("SSR") 83-10. Sedentary work in turn "involves lifting no more than 10 pounds at a time . . . ." 20 C.F.R. § 404.1567(a).

I find that remand for further administrative proceedings as to the question of the proper weight to be given to the medical opinions would not be futile. I agree with Ms. Soto that because she was straddling age categories, if after a proper weighing of the medical opinions, the ALJ determines that she has a more restrictive RFC (no more than sedentary work), there could potentially be a finding of disabled under the Grid[5] and/or after posing a hypothetical question to the VE. *See Seavey v. Barnhart*, 276 F.3d at 5-7. As noted above, at this step (Step Five), it is the Commissioner who has the burden to come forward with evidence of specific jobs in the national economy that a claimant can still perform. *Arocho*, 670 F.2d at 375. The ALJ's error in assessing Plaintiff's RFC as discussed above is thus not harmless. *See Laskey v. Astrue*, No. 08-153-P-S, 2009 U.S. Dist. LEXIS 7853, 2009 WL 232549, at *5 (D. Me Jan. 29, 2009), *affirmed by* 2009 U.S. Dist. LEXIS 16580 , 2009 WL 536892 (D. Me Mar. 3, 2009) (noting that the decision whether to accord the plaintiff a sedentary or light RFC was "outcome-determinative" because a claimant whose medically determinable impairments limit her to the performance of sedentary work, who is age 50 or older, has a high school education, and unskilled work experience or no transferable work skills, is deemed disabled.).

---

[5] "'The Grid,' as it is known, consists of a matrix of the applicant's exertional capacity, age, education, and work experience. If the facts of the applicant's situation fit within the Grid's categories, the Grid 'directs a conclusion as to whether the individual is or is not disabled.'" *Seavey v. Barnhart*, 276 F.3d at 5 (citations omitted). Here, the Commissioner has not disputed that Rule 201.12 would direct a finding of disabled for a claimant with Plaintiff's medical-vocational profile if the RFC changed from light to sedentary.

## IV. CONCLUSION

In view of the above, the decision of the Commissioner is reversed, and the case is REMANDED for further proceedings not inconsistent with this opinion. The ALJ is directed to reassess Plaintiff's RFC, with a particular focus on evaluating the medical opinions on Plaintiff's limitations on lifting and carrying, and to fully articulate the factors of supportability and consistency in determining their persuasiveness.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico this 24th day of August 2026.

S/Héctor L. Ramos-Vega
HÉCTOR L. RAMOS-VEGA
UNITED STATES MAGISTRATE JUDGE